THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RANDELL B. NEALY, | CASE NO. C22-0136-JCC |
| Plaintiff, | ORDER |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

## I.    BACKGROUND

This case arises from Plaintiff's recent health complications. Plaintiff alleges that from late 2016 to April 2019, he had a parasite infection that went undiagnosed by the Veterans Affairs Hospital in Seattle ("VA"), causing him various physical injuries, including erectile dysfunction, gastrointestinal incontinence, and pain. (Dkt. No. 5 at 5.) According to the evidence submitted by Defendant in support of its motion,[1] Plaintiff first visited the Puget Sound VA for a visit with primary care physician Dr. Jeremiah Alexander on December 7, 2016. (Dkt. No. 20-1 at 2–8.) During the visit, Plaintiff and Dr. Alexander discussed Plaintiff's chronic back pain,

---

[1] Plaintiff submitted no evidence in opposition to Defendant's motion. (*See* Dkt. No. 22, 24.)

alcohol and cannabis use, cataract history, and a health care maintenance plan. (*Id.* at 4–5.) Plaintiff did not, however, report any gastrointestinal issues. (*Id.* at 3.) Plaintiff returned to the Primary Care Clinic for additional check-ups in February 2017, May 2017, June 2017, September 2017, and April 2018. (*Id.* at 9–33.) Plaintiff discussed his back pain, alcohol use, and dizzy spells he had been experiencing. (*Id.*) Plaintiff did not report any gastrointestinal issues. (*Id.*)

Plaintiff also received impatient treatment at the VA Medical Center on two occasions. In August 2017, Plaintiff was admitted after experiencing an irregular heart rate. (Dkt. No. 20-2.) Plaintiff stated he did not have any abdominal pain, constipation, or diarrhea at the time he was admitted. (*Id.* at 3.) Plaintiff was monitored in the hospital for a few days before being discharged. (Dkt. No. 20-3.)

Plaintiff dropped-in to the Primary Care Clinic on December 27, 2018, after a fainting episode. (Dkt. No. 20-1 at 31–32.) Dr. Alexander recommended Plaintiff report to the emergency room for further evaluation. (*Id.* at 32.) Plaintiff was admitted to the hospital, and received an echocardiogram. (Dkt. No. 20-4 at 3–4.) During his intake assessment, Plaintiff had no complaints of constipation or diarrhea. (Dkt. No. 20-5 at 4.) However, the following day Plaintiff reported multiple episodes of diarrhea. (Dkt. No. 20-6 at 4.) A subsequent stool sample test came back negative. (Dkt. No. 20-7.) Plaintiff was discharged on December 29. (Dkt. No. 20-4 at 3–4.) During a follow-up call on December 31, Plaintiff reported he was recovering well and wanted to discuss anticoagulation therapy with his primary care physician. (Dkt. No. 20-8.)

On January 15, Plaintiff attended a routine follow-up. (Dkt. No. 20-9.) At the check-up, Plaintiff reported swelling in his feet and shins. (*Id.*) Dr. Alexander noted some abnormalities in Plaintiff's bloodwork and recommended a follow-up test. (*Id.*) On February 7, Plaintiff's girlfriend called the VA to schedule an appointment to discuss going into detox, but Plaintiff failed to show for the appointment. (Dkt. Nos. 20-10, 20-11.) On February 14, during a follow-up call, Plaintiff stated he was still having weakness and had been having some diarrhea. (Dkt. No. 20-12.) Dr. Alexander asked Plaintiff to come to the clinic for evaluation and stated a

medical assistant would follow-up to schedule an appointment. (*Id.*) The next day, Plaintiff's girlfriend called, stating they would not be coming in due to Plaintiff's current health condition but asked for an urgent call back. (Dkt. No. 20-13 at 3.) On a follow-up call, Plaintiff stated he was feeling worse and concerned about his health. (*Id.*) The medical assistant told Plaintiff that Dr. Alexander was unavailable for the next week, but that Plaintiff should go to the emergency room if he felt he was getting worse. (*Id.*) Plaintiff stated he would wait and see how things went. (*Id.*) On February 19, Plaintiff's sister called the VA to report that Plaintiff was not doing well but refused to go to the VA. (Dkt. No. 20-14 at 3.) She stated she would try to get him to agree to go to the emergency department. (*Id.*) According to VA records, Plaintiff did not visit the hospital on that day. (*See* Dkt. No. 20-15.)

On March 4, 2019, Plaintiff was admitted to the emergency department at Overlake Medical Center. (Dkt. No. 20-16.) According to his intake notes, Plaintiff was in "his usual state of health" until three days before admittance. (*Id.* at 3.) At intake, Plaintiff reported an acute onset of watery diarrhea, abdominal bloating, abdominal pain, and subjective fever and chills. (*Id.*) Plaintiff stated he had been experiencing intermittent diarrhea episodes since January, but that it got acutely worse in the days leading up to his visit. (Dkt. No. 20-17 at 2.) The infectious disease doctor concluded the diarrhea was likely caused by cryptosporidium infection, with liver disease also potentially a factor. (*Id.* at 5.) The doctor started Plaintiff on a three-day course of treatment. (*Id.*) He also saw a gastroenterologist, who suggested Plaintiff needed treatment for end-stage liver disease, but that treatment options were limited because he refused to abstain from alcohol. (Dkt. No. 20-18 at 6.) On March 19, Plaintiff demanded to leave the hospital and was discharged against medical advice. (Dkt. Nos. 20-16 at 4, 20-19.)

Plaintiff was next admitted to the VA hospital on April 2, 2019 because he was experiencing abdominal distension, pain, and diarrhea. (Dkt. No. 20-20.) A stool sample test returned positive for norovirus, but the diarrhea resolved on its own over the course of his stay at the hospital. (*Id.* at 2.) Plaintiff also received treatment for cirrhosis of his liver. (*Id.*) Plaintiff was discharged on April 8 with a recommendation for home skilled services after discharge. (*Id.*

1   at 3.)

2        Plaintiff filed suit against the Veterans Affairs Hospital in February 2022. (Dkt. No. 1.)

3   The Court granted Plaintiff's motion to proceed *in forma pauperis*, and substituted-in Defendant

4   as the proper defendant. (Dkt. Nos. 4, 10.) Defendant now asks the Court to grant summary

5   judgment to it on all claims and dismiss the case. (Dkt. No. 19.)

6   **II.  DISCUSSION**

7        **A.  Legal Standard**

8        "The court shall grant summary judgment if the movant shows that there is no genuine

9   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

10  Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable

11  inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v.*

12  *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly

13  made and supported, the opposing party "must come forward with 'specific facts showing that

14  there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

15  574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party

16  "may not rest upon the mere allegations or denials of his pleading . . . ." *Anderson*, 477 U.S. at

17  248 (citations omitted).

18       **B.  Medical Malpractice**

19       Plaintiff alleges his medical team at the VA failed to diagnose an infection that caused

20  him great harm. (Dkt. No. 1-1 at 5.) Under the doctrine of sovereign immunity, the United States

21  is immune from suits for damages except where Congress has expressly waived its immunity.

22  *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). The FTCA contains a limited waiver of

23  sovereign immunity, allowing claimants to bring suit for injury or loss of property arising from

24  the negligent or wrongful act or omission of any government employee acting within the scope

25  of their employment. 28 U.S.C. § 2679(b).  The United States is liable if a private person "would

26  be liable to the claimant in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b). Thus, the Court applies Washington law here.

1    Under Washington law, plaintiffs in a medical malpractice action must prove two

2 elements: "(1) that the defendant health care provider failed to exercise the standard of care of a

3 reasonably prudent health care provider in that same profession and (2) that such failure was a

4 proximate cause of such injuries." *Fausto v. Yakima HMA, LLC*, 393 P.3d 776, 779 (Wash.

5 2017). Expert testimony is required to establish the standard of care, except in extremely limited

6 circumstances where understanding causation does not require medical expertise. *Id.* (citing

7 cases). Examples of this exception may include amputating the wrong limb or poking a patient in

8 the eye while stitching a wound. *Young v. Key Pharm, Inc.*, 770 P.2d 182, 189 (Wash. 1989).

9 Absent such circumstances, a defendant is entitled to summary judgment if the plaintiff fails to

10 present competent expert testimony. *Reyes v. Yakima Health District*, 419 P.3d 819, 823 (Wash.

11 2018).

12    Here, Plaintiff does not present any expert testimony establishing a standard of care. (*See*

13 *generally* Dkt. Nos. 22, 23, 24.) And, because the finder of fact would require medical expertise

14 to know whether Plaintiff's symptoms arose because his medical team failed to exercise a

15 standard of care a reasonably prudent health care provider would provide, the exception does not

16 apply. In contrast, Defendant provides unrebutted testimony from a potential expert witness

17 stating the medical team did meet the standard of care. (Dkt. No. 20-22.) Because Plaintiff

18 presents no evidence to support his argument that his medical providers failed to exercise the

19 appropriate standard of care, he fails to establish a genuine issue of fact and, on this basis, his

20 claims necessarily fail.

21 ## III.    CONCLUSION

22    Defendant's motion for summary judgment (Dkt. No. 19) is GRANTED on all claims.

23 This case is DISMISSED with prejudice.

24 //

25 //

26 //

ORDER
C22-0136-JCC
PAGE - 5

DATED this 15th day of June 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE